Good morning, Your Honors. May it please the Court, Barry Levy on behalf of Omega as appellant. The question presented by this appeal is whether the first sale defense to a copyright infringement action applies to copies made and first sold outside the United States and then imported into the United States without the copyright owner's authority. This question has already been answered by this circuit in several prior cases that are squarely on point. In each case, this circuit held the first sale defense does not apply under the similar circumstances to this case. And that is because, in this case, the watches were manufactured in Switzerland. Is that the reason? Right, the copies were made in Switzerland and they were sold. Whereas if they had been made in the United States, then sold over there and then came back, then you'd have Quality King, right? Right. Quality King is the exception. The basic principle has been and continues to be that the first sale defense applies where the copy is made and first sold in the United States, as you posited, and does not apply where the copy is made and sold outside the United States and later imported into the United States without authorization. That's our case. And there's that exception, that Quality King exception. And Quality King is a very limited exception. But it contrasts sharply, does it not, with our Drug Emporium, Denver Care and at least part of BMG Music? Not really, because the basic holdings of those cases, of BMG Music and the Parfums Givenchy cases, basically stand for the proposition that where the copy has been made outside the country and sold outside the country and is brought in without the authority of the copyright holder, that the first sale defense doesn't apply. In Denver Care, in which the court looked at BMG and at Parfums and said those are the law of the circuit, the court in Denver Care would have applied it, except in that particular case it said that the sale was in the foreign trade zone and then it says that's the part of the United States. So, therefore, you're back into the United States. You're outside this basic rule. But every case, every court that has looked at the factual circumstances that exist in this case, have agreed with the rule. Let me get my handle on what the logic of this rule is. What's the rationale for this? I mean, somebody sells watches in Switzerland to somebody else in Egypt or Ecuador or Israel or somewhere. And then somebody there sells it to another party who then in turn sells it to Costco. And Costco is being held for copyright infringement. Yes. What's the logic of that? The logic is... I mean, they paid good money, not for knockoffs, they paid good money for legitimate products. These are gray market goods. This is the concept of parallel importation. This is what Congress chose to... What makes them gray market? What makes them gray market is what Justice Stevens explains in his Quality King opinion. They are lawfully made goods, but not lawfully made under Title 17. And Justice Stevens goes through that at great length in his opinion in Quality King. What happened is, if we take it back a little bit and look at the congressional history... Can I just interrupt you to this point? Yes. Justice Ginsburg in her concurrence indicated, and I'm quoting here, we do not today resolve cases in which the allegedly infringing imports were manufactured abroad. Right? Yes. So to the degree that goods were manufactured abroad, they're not covered by Quality King. In her opinion. Yes, in her opinion. Right. Exactly. She might have blinders on. I don't know. I don't think anyone would venture to make the statement that she had blinders on. You could have been here for the last two weeks. I was, and I'm not going to touch that one. But I think that she was very clear. What she was saying is, she used the term recognizes. She says, I concur, recognizing that the Court's opinion did not cover this area and only covered the round-trip situation. And the round-trip situation is the unique circumstance of Quality King. Not our case. Your case in Quality King involved different manufacturing sites, correct? Yes. Also point out to the Court that in BMG Music and in Park Humes, where this circuit established the rule that we're relying on, the Supreme Court denied certiorari in both of those cases. Then this circuit went a step further in Quality King, and it applied its rule to that round-trip situation. And the Supreme Court says, wait a minute. The Third Circuit in Sebastian also looked at a round-trip situation, and they came down differently than this circuit. And so the Supreme Court took that case just to deal with that round-trip situation. And when you look at Justice Stevens' opinion, you look carefully at Section Roman IV of that opinion, you can see that he doesn't reach our situation because he doesn't have to, but it's interesting that he uses a hypothetical, a hypothetical that is not the round-trip situation, to make his point, which I believe his point was to limit the opinion of the Court to the round-trip situation, pointing out this is the hypothetical, or the example that he uses between the U.S. and the British distributors, and points out that the U.K. distributor, then if he comes into this country and tries to sell it here, he doesn't have that defense. He, Justice Stevens, uses that to accomplish, I would suggest to the Court, a couple of things. One is to show that the basic rule, the rule that we're advocating, is still alive and well, this Court's rule. And also to harmonize Sections 109A and Section 602A, because what happens is that some of the criticisms of this Court's original decision in BMG was that perhaps it could be read in a way, and there may have been some of the verbiage that could have led one to believe it could be read in a way to take it too far. And in Parfums and Denbighare, I think the Court recognizes that, and this Circuit, you know, its rule makes sense. And Quality King understands that. And Justice Stevens understands, too, and I think he's trying to explain, that if you don't harmonize 109A, the first sale defense, and 602A, which is Congress's enactment of a statute that says it is infringement to import into the United States a copy made outside the United States without the authority of the copyright holder. So, can you start? No, Costco was not the importer, is that right? Excuse me? Costco was not the importer, somebody else imported it? Yes. Okay. I believe that would be the case. Suppose somebody goes to Costco and buys a watch, and then pawns it. Are they also infringing the copyright? Where does this stop under your construct? Under Quality King and other cases, a company like Costco that buys, commercially buys these goods, is liable for infringement, and it's not a matter of what their knowledge was, what they understood. How about the person who buys from Costco? I don't believe that's a copyright infringement if you're buying, and you're not buying it for commercial use. Suppose I buy it intending to sell it. If I go to Costco and I intend to sell it to my friends in Florence. Well, it's true that, you know, you can be a member of Costco and have a wholesaler's, you know, one of those wholesaler's card, and you buy the stuff because you buy all the pickles, and you buy the ketchup because you have a little store, and you sell it, yes, you would, I would submit to the court, you would be an infringer. Do you think that's just mind-boggling? Well, it's not because it doesn't, it's not going to what the penalties would be, other than that you can't do it, but the courts have been very clear, and the congressional intent and the statutes are clear, that you cannot infringe the copyright by doing this. Now, if it's brought in here with authorization, it's a different story, and the problem is, and I'd like to go back to Your Honor's mention of... I'm Smith. I've learned a lesson watching the Supreme Court arguments that try to avoid any use of names for fear that you'll do something wrong. None of us is a potted plant. But Justice Ginsburg's concurrence where she states her recognition and then it's interesting, the majority, Justice Stevens feels no need to respond to that. We know, we see it all the time in Supreme Court opinions, that if a dissent or a concurrence says something that the majority doesn't like, the majority gets its shot and then there's a footnote or some comment saying you don't know what you're talking about and so on. He didn't need to because she knows what she's talking about. She didn't have blinders on. She's expressing, expressly expressing what he was trying to accomplish. And Congress, there was a great deal of debate and discussion before Congress enacted 602A, put it into the 1976 Act. There was at least a decade or more of discussions, hearings, every commercial entity, everybody was getting their two sides in of what it should be. And Congress made a couple of decisions in there. And one of them was that they would regulate not just pirated goods, the black market goods, that's covered in the 602A, but they also finally decided they would cover parallel imports or gray market goods. And gray market goods are what we're talking about here. Congress decided there is a problem with the importation of gray market goods. And Congress made that choice. It's not up to the courts to second guess the wisdom of Congress as to that. And perhaps, Your Honor, when you look at Quality King again, a couple of parts of Quality King that you might take a look at that might help to alleviate some of your concerns about it might be, for example, when Justice Stevens quotes 109A, the First Sale Doctrine, and he quotes and throughout his opinion he makes, puts great emphasis on the words of that lawfully made under this title. And he explains in a footnote, in footnote 9, that the previous acts, the 1909 and 1947 acts, referred to, quote, any copy that, quote, has been lawfully obtained. He then explains it is, and I'm quoting, it is noteworthy that Section 109A of the 1978 Act does not apply to, quote, any copy. It applies only to a copy that was, quote, lawfully made under this title, close quote. And every court that has considered this issue after Quality King, except for the district court in this case, which wrote no opinion and gives no explanation how it gets there, every one of the leading commentators, Nimmer, Goldstein, Paltry, they all agree as to what this means. If I have a minute left, you're welcome to use it or reserve it. I'd like to reserve it. Thank you, Mr. Levy. Good morning. Good morning. May it please the Court. My name is Norman Levine. I represent Costco, the appellee. We're talking about this wristwatch. If the Court wants to see it, it has a tiny little design on the back, which is the source of the copyright claim brought under this title. That is to say, under Title 17. That's all under this title means. It means under Title 17 U.S. Code, and that's why we're here in the federal court. Why doesn't that mean manufactured in this country? Well, there's two reasons, Your Honor. The first reason is that plain language is the way we look at any statute. Under this title is not a unique phrase in the sections before us or under the copyright laws. If you look through almost any title in the United States Code, you'll find sections that say under this title. It's in Title 42 and in Title 18. It's in the bankruptcy code. It's all over the code. Under this title means under the laws of this title. It has nothing to do with a location. So your position is that the Supreme Court and our court has ruled on the concept that if a watch in this case is manufactured in Switzerland and then ultimately imported into the United States, that it is made under the auspices of this code, i.e. 17. Is that correct? We believe that if it's authorized by the copyright owner to be manufactured. Okay, let's say that it's authorized. So you're saying that that is the case. What case are you citing either from the Supreme Court or from our circuit that says that? I have to do it in reverse, Your Honor. I have to tell you why it's not. I understand that that's what you would like it to say, but tell me what the case is that says that a watch in this case manufactured in Switzerland is manufactured under this title. What case says that? Quality Kings says that, Your Honor, because it undermines and eliminates any claims of manufacture. How can that be? That case involved goods manufactured in the United States. That case did. Yes. Whether she had blinders on or not, Justice Ginsburg observed that it did not deal with the issue of goods manufactured outside the United States. So on what basis do you say that that case sustained your proposition? You have to start at the beginning, Your Honor. You have to start with the CBS versus Scorpio case. That was an Eastern District, Pennsylvania case in 1983. That's the case that first held the proposition that the Ninth Circuit affirmed in BMG Music. And that case basically did so based on two different theories. One of them is a statutory interpretation theory that lawfully manufactured under this title has something to do with either place of manufacture or place of sale. And the other proposition in Scorpio is that if you don't read manufacturer or sale location into the statute, 602 would be rendered meaningless. But the Supreme Court clearly said in Quality King that they expressly addressed that issue and discarded it. They discarded that. But that was the only thing left in the Ninth Circuit when the case went to the Supreme Court. The Supreme Court took the case after the Ninth Circuit panel had said that the only thing left from Scorpio is the rendered meaningless prong of Scorpio. The Ninth Circuit had rejected location in its decision in Quality King, Lanza versus Quality King. The Ninth Circuit had also utilized or applied the first sale doctrine in Denbighare, where the goods were manufactured in Hong Kong. So Hong Kong was just as Switzerland, not in the United States. The Ninth Circuit found that the place of manufacture outside the United States did not preclude the enforcement of the first sale defense. So there was nothing left of Scorpio when the Quality King case went to the United States Supreme Court other than the rendered meaningless prong which the Supreme Court eviscerated. There was nothing left. Quality King took the Scorpio rule, which had three or four prongs. All the prongs but one had been cut off. That chair has no leg to stand on anymore. Now, Justice Stevens, nowhere in his decision uses the place of manufacture for any purpose. If Justice Stevens' intention had really been to differentiate Switzerland manufacture against U.S. manufacture, he could have said so, but he did not say so. Justice Ginsburg, and I swore to myself I wouldn't use the word blinders in this argument, Justice Ginsburg said, it occurs to me that there's a distinction here. Now, I would take issue with counsel's position that if Justice Stevens disagreed with that, he would have said so. If Justice Stevens agreed with that, a simple footnote in his decision saying, we're only looking at the round trip, we're not looking at the one-way trip, would have eliminated the need for Justice Ginsburg to write at all. I would submit that the fact that Justice Stevens allowed that decision to stand, the concurring opinion, to go into the record was because he didn't agree with it, because there was no reason for him to not adopt the concurrence in his majority opinion unless he agreed with it. Let me just, I'm very fact-focused on this, because I think those are the distinctions in these cases, and I want to be sure that we're on the same page. You agree that in Quality King, the goods that were the subject of the copyright were manufactured in the United States, correct? Okay, now in BMG Music, it specifically states, lawfully made under this title refers to, and I quote, only to copies legally made and sold in the United States. Correct. Quoting Scorpio. Okay, but that was BMG's holding as well, right? That was BMG's holding. Okay, so then we get down to Parfums Givenchy and to Denbighare. As I understand the facts of those cases, the copies were made in the United States, then sold overseas, and then they came back. Parfums, yes. Denbighare, no. Denbighare was manufactured in Hong Kong. Okay. Do you have a site on where that is stated in your opinion? Yes. Denbighare. It's 84F 3rd 1143, and it says... I've got the case in front of me. Where are you looking at specifically that talks about it being manufactured overseas? In the first paragraph under factual background, it says, in 1983, DPI ordered a large quantity of diapers from its Hong Kong manufacturer. Approximately 450,000 diapers, the Hong Kong diapers, were shipped by the manufacturer to the United States and held in a foreign trade zone. Okay, so you're... I see what you're saying there. So you're saying that when DPI ordered this, the diapers from its manufacturer, that's where you're saying that it manufactured them was in Hong Kong, right? That's the only thing I can derive from the opinion, yes. That's at page 1145. Okay, thank you. So we have Ninth Circuit opinions pre-Quality King applying the first sale doctrine, both as to American-made goods and the goods made abroad. Okay, I appreciate that clarification. I think that the key is, really, as you read these cases, and it's a strange trail of cases, that BMG, which picked up this language from the Eastern District of Pennsylvania 1983 District Court decision, was a decision that this Court has struggled with ever since. And if you read perfumes, you read Denbigh-Kerr, and you read de Senos, and then finally the Court of Appeals decision in Quality King, not one of those panels liked that ruling, but all of them were bound by that ruling, and they kept narrowing it and narrowing it and narrowing it, until they got to Lanza v. Quality King, where they narrowed it to this last remaining prong, which was the rendered meaningless prong, which, as Your Honor has already said, Justice Stevens didn't like at all, and there were no more prongs. The house of cards, or whatever you want to call it, fell down. There was no logical underpinning for the distinction between manufacturing abroad, just as there had originally been a distinction made on the location of sale that this Court rejected long ago. So for 15 years, this Court struggled with, how do we deal with this BMG music opinion, based upon the Scorpio opinion, which Judge Felser in her C&C Beauty case tore apart, but she also found one prong, which was a rendered meaningless prong. Now the rendered meaningless prong is itself rendered meaningless, and there is no basis on which this Court could, post Quality King, uphold a distinction based on the place of manufacturing. Okay, so following your logic then, as applied to this case, where does the first sale defense come in? I'm not sure I understand the question. When you say where, are you asking for location or the analysis? In this case, you of course are claiming that the sale took place outside the United States, therefore there's no more duty left, right? Yes. Okay, and what case or cases do you refer to that you believe sustain that proposition, post Quality King? There are no post Quality King cases that sustain that proposition. All of the cases post Quality King have arisen, like the Pearson case. Counsel submitted to the Court last week the Pearson case, which upheld the manufacturing distinction, which I think is gone from the cases. It's a default case. The defendant was a pro per. They didn't file papers in opposition to summary judgment. The cases post Quality King have been, for the most part, in the district courts. They have been against small defendants. No one has litigated this issue the way we have. No one has raised any of these issues. Each of the cases that preceded Quality King was against a large retailer, Costco, Toys R Us, Drug Emporium. Each of these cases post Quality King is against a small retailer, most of whom are either in default or pro per, none of whom have asked the Court to analyze the cases the way we have. And we submit that the reason for that is that the luxury manufacturers, the Givenchy's who used to file these cases, know that the game was over after Quality King because there was nothing left of the decision after Quality King. What pre-Quality King case do you cite or cases do you cite for the proposition that you don't owe a duty, a copyright fee to Omega in this case? I cite Quality King in this court, which said that the only remaining basis is the rendered meaningless prompt. Okay, now the Supreme Court reversed this court on that basis, didn't it? Yes. So how can you cite that as the basis? I'm sorry. I didn't say it clearly, perhaps. What I'm saying is that pre-Quality King, there was no ground for this court to rule against us other than the rendered meaningless prompt. And when the Supreme Court found that to be not a valid argument, there was left nothing on which this court could find against us. The only basis to find that the first sale doctrine does not apply is to read the words under this title, in the phrase lawfully made under this title, to mean manufactured abroad. Now, I submit to you that if Congress meant manufactured abroad, they would have said manufactured abroad, because in Section 601, which was enacted the same day as Section 602, which used the words made under this title, they, in the same sentence, the exact same sentence, made under this title, used the words manufactured in the United States or Canada. So under this title can't mean manufactured abroad, I'm sorry, manufactured in the United States, if it's used to modify the word Canada. And it couldn't have been meant to be interpreted differently in 602 than it was in 601, which were enacted in the same time. So it makes no sense to me to argue, under this title, a common statutory phrase that applies throughout the United States Code when it suddenly means in the United States, in Section 602 of the Copyright Act, when it means something entirely different in Section 601 and every other title of the U.S. Code. And having just one minute, if I could just turn to one other thing, I want to just mention the absurd results and the untenable results, as this Court called them, in Parfums Givenchy that would result from differentiating us from Quality Kings based on location of manufacture. If the Court were to so hold, that would mean that foreign manufacturers get better copyright protection under U.S. law than U.S. manufacturers. That would tell us that anyone manufacturing copyrighted product in the United States better stop manufacturing here, better move their plant to Europe or Asia or Latin America, because Congress intended for some reason to give better protection to foreign manufacturers. And then with respect to Judge Silverman's hypothetical, that's correct. Somebody buying at Costco, buying this wristwatch and selling it next week at a garage sale or a swap meet or at a small retail store would be an infringer just as Costco. There's nothing in the law that would stop the infringement, the ability to sue for infringement with us. Are there other defenses? I realize we're talking about the first sale defense. Yes, there are several. There is the importation defense. Yes, there are several. There is an implied authorization defense, which is the one upheld in the de Seno's case. There are several. If the judgment of Judge Hatter is affirmed, are you finished then on this case or do you go back and litigate these other defenses or is that the ballgame? If it's affirmed, we're done. Anything else from Judge Smith or Rowlandson? May we take a peek at the watch you brought? Watch you? Yes. Let the record show counsel has received the watch back. Mr. Levy, you're up. Thank you, Your Honor. I'd like to use the bulk of this rebuttal time to take the Court back to the beginning of its dialogue with Mr. Levine.   was a case that had been brought to the Court and counsel pointed you to the fact in the beginning of the Denbighare case. I would point the Court to the Court's discussion in Denbighare at, where's the page? These Westwood things are so hard to find the page number. But I'll read. What's the caption? I have the case here. It's under Head Note 5. It's the discussion where the Court is talking about its decision in the law in this case. Is it under first sale or is it under what? It's under first sale, under B. Yeah, it's the next page. And the Court, after discussing the BMG case and the Parfums-Gavanchi case towards the end of the page, says, quote, Thus, under the law of the circuit, section 109 applies to copies made abroad only if the copies have been sold in the United States by the copyright owner or with its authority. In this case, there was such a sale as discussed above the foreign trade zone as part of the United States. And that's okay. It was not. What they're saying is, yes, the basic rule applies if it's made out of the country, but if it's sold with authority by the copyright owner, then the first sale. So then we get back to the issue I was exploring with Mr. Levine, and that is that there is no authority that I'm aware of that says that if there is, in this case, a watch manufactured in Switzerland, that the laws of the title here apply. Is that correct? I'm not sure that I quite understand. Let me say this a bit. When something is made outside the United States pursuant to a license and it's imported, the first sale defense doesn't apply because it hasn't been sold yet for purposes of this title. Is that a better way to put it? I think so. If it's imported into the country with authorization, then it's not infringing because 602A says without authorization. Yes, then it would be infringing. Also point out that Justice Stevens, in his opinion, really, you know, we're talking about does Quality King ever talk about place? Well, he says when he's talking about the comparison, 602A and 109A, he says, in fact, 602A, and then he says, is broader because it encompasses copies that are not subject to the first sale defense, e.g., copies that are lawfully made under the law of another country. And that's what we have here. Thank you, Your Honor. I believe we thank you. Mr. Levine, thank you as well. The case argued is submitted. Good morning. 0855020, Herbal Life v. Ford. Each side will have 15 minutes.
judges: Silverman, Rawlinson, Smith